[No. 18003.     Department One. — March 27, 1893.]

## LINDSAY IRRIGATION COMPANY, RESPONDENT, *v.* WILLIAM MEHRTENS ET AL., APPELLANTS.

EMINENT DOMAIN — PUBLIC USE — LIMITATION OF AUTHORITY — PROOF OF AGENCY FROM STATE. — The right of eminent domain can be exercised only in behalf of those public uses which the legislature has authorized, and in the mode and with the limitations prescribed by the statute authorizing it. Whoever, under claim of agency from the state, would deprive an owner of his property, by the exercise of eminent domain, must show not only that the use is a public use, but also that the legislature has authorized the right for that particular use, and in the mode in which he is seeking to appropriate it.

ID. — LEGISLATIVE DECLARATION OF PUBLIC USE — POWER OF JUDICIARY — DETERMINATION OF INDIVIDUAL CASE. — Where the legislature has designated the uses in behalf of which the right of eminent domain may be exercised, the designation is a legislative declaration that such uses are public, and will be recognized by the courts; but whether, in any individual case, the use is a public use must be determined by the court from the facts and circumstances of that case.

ID. — SUPPLYING FARMING NEIGHBORHOODS WITH WATER — EFFECT OF CODE PROVISION. — Section 1238 of the Code of Civil Procedure, giving the right of eminent domain for the construction of canals and ditches for supplying farming neighborhoods with water, is a legislative declaration that the use is a public use, and the declaration must be regarded as falling within the scope of legislative duty in providing for the public welfare.

ID. — APPLICATION OF TERMS — "FARMING NEIGHBORHOOD" — "PUBLIC USE" — EVIDENCE. — The term "farming neighborhood," as used in the code provision, is an indefinite expression, and whether it can be applied to any particular tract of land must be determined by evidence; and the term "public use" is also an expression of indefinite signification, and its application to the facts of any particular case is to be determined from evidence.

ID. — DEFINITION OF "FARMING NEIGHBORHOOD" — NUMBER OF PROPRIE-TORS — SINGLE OWNERSHIP. — A "farming neighborhood" is a region in which there are several tracts of farming land with a proximity of location, and which can be regarded as a whole with reference to some common interests, although they are distinct in boundaries, and held in individual proprietorship. Its extent need not be characterized by fixed boundaries, nor is its existence determined by any definite number of proprietors, and while a tract of land, though large in extent, might, if held in different proprietorships, constitute a neighborhood, yet it would not if it were held in single ownership.

ID. — ENJOYMENT OF USE — NUMBER OF PERSONS CAPABLE OF ENJOYMENT. — It is not necessary, in order to render the supplying of water to a farming neighborhood a public use, that the entire public shall enjoy the use, or even that it be capable thereof, but the use must be capable of enjoyment by all who may be within the neighborhood, and there must be within that neighborhood so great a number of the entire public as to destroy its character as a private use.

ID. — PROXIMITY OF SEVERAL TRACTS — RESIDENCE OF PROPRIETORS — CULTIVATION OF LANDS. — It is the proximity of several tracts of land which constitutes a farming neighborhood, and it is not necessary, in order that the use should be public, that a proprietor should reside upon or cultivate his land in person, but it is sufficient that the lands are cultivated by tenants or employees of the proprietors.

ID. — OWNERSHIP OF STOCK IN CORPORATION PLAINTIFF. — Where the right of eminent domain is sought to be exercised for the purpose of the building of canals and ditches for supplying a farming neighborhood with water, the fact that the owners of the land in the neighborhood are stockholders of the corporation seeking the right, and that a majority of the stock is owned by a few persons, who are also the owners of the greater portion of the land to be supplied with water, does not of itself change the supplying of water to the neighborhood from a public to a private use, although such facts should properly be considered in determining whether the region constitutes a farming neighborhood, and whether the supplying of water therefor is a public use.

ID. — QUESTIONS OF FACT — CONCLUSIVENESS OF FINDINGS — REVIEW UPON APPEAL — DISCRETION. — The questions as to whether a particular region is a farming neighborhood, and whether the supplying of water to that neighborhood constitutes a public use within the meaning of section 1238 of the Code of Civil Procedure, providing that the right of eminent domain may be exercised in behalf of certain public uses, among which are included canals and ditches for supplying farming neighborhoods with water, are questions of fact for the trial court to determine, and its decision thereon is conclusive, where there is any evidence to support it, and there is no abuse of discretion shown.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. B. Wallace,* and *W. W. Cross,* for Appellants.

*George H. Smith,* for Respondent.

HARRISON, J. — The plaintiff is incorporated under the laws of this state for the purpose of supplying water for irrigation and domestic use, and other purposes to which water may be put, to the farming neighborhood surrounding and lying contiguous to the town of Lindsay, in the county of Tulare, and seeks in this proceeding to condemn certain lands for the purpose of constructing a ditch or canal through which to conduct water from Kaweah River to said farming neighborhood. Judgment was rendered in its favor for a condemnation of the land sought to be appropriated by it, and fixing the amount of damage which should be paid by it to each defendant for the land taken from him. In their appeal from this judgment, the argument of the appellants is directed chiefly to an attempt to show that the land to which the plaintiff seeks to conduct the water is not a farming neighborhood, and that the supplying of water to that land is not a public use, and therefore the plaintiff cannot exercise the right of eminent domain for the purpose of taking their lands.

The right of the state to take private property for public use is an inherent element of its sovereignty, and its exercise is restrained only by the limitations contained in the constitution. The right to take the property is not conferred by the constitution, but is to be exercised in conformity with the will of the sovereign, as expressed by the legislature, and such right can be exercised only in behalf of those public uses which the legislature has authorized, and in the mode and with the limitations prescribed in the statute which confers the authority. Whoever, under the claim of an agency

of the state, would deprive the owner of any of his property by virtue of the exercise of eminent domain must show not only that the use for which he seeks to appropriate it is a public use, but also that the legislature has authorized the taking of property for that particular use, and in the mode in which he is seeking to appropriate it. The legislature must designate, in the first-place, the uses in behalf of which the right of eminent domain may be exercised and this designation is a legislative declaration that such uses are public, and will be recognized by courts; but whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of that case.

Section 1238 of the Code of Civil Procedure provides that "the right of eminent domain may be exercised in behalf of the following public uses: . . . . 4. . . . . Canals, ditches, flumes, aqueducts, and pipes for public transportation, supplying mines and farming neighborhoods with water." This is a legislative declaration that the supplying of water to a farming neighborhood is a public use, and such declaration must be regarded as falling within the scope of legislative duty in providing for the public welfare. (*In re Madera Irrigation District*, 92 Cal. 309–311.) "If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court." (*Id.*) In a state like California, where so great a portion of the land is susceptible of agriculture, it may well be said, in view of the climatic peculiarities and topographical distribution of the land, that the legislature is acting for public welfare in making provision for supplying its many farming neighborhoods with water. "We are not prepared to say that the supply of water to 'farming neighborhoods' for irrigation (and the code evidently means for irrigation) may not be for a public use. Indeed, in view of the climate and arid soil in parts of the state (for this object cli-

mate and soil may properly be considered), it is safe to say that the supply for such use may be that which the legislature has decided it to be,—a public use. The judgment of the legislature that it is such ought not, therefore, to be disturbed by the courts." (*Lux* v. *Haggin*, 69 Cal. 304.)

The term "farming neighborhood" is an indefinite expression, and whether it can be applied to any particular tract of land must be determined by evidence. The word "neighborhood" is not synonymous with territory or district, but is a collective noun with the suggestion of proximity, and refers to the units which make up its whole, as well as to the region which comprehends those units. One of the definitions given in the Century Dictionary is, "A district or locality, especially when considered with relation to its inhabitants or their interests." A farming neighborhood may be defined as a region in which there are several tracts of farming land with a proximity of location, and which can be regarded as a whole with reference to some common interests, although they are distinct in boundaries, and held in individual proprietorship. Its extent need not be characterized by fixed boundaries, nor is its existence determined by any definite number of proprietors, and while a tract of land, though large in extent, might, if held in different proprietorships, constitute a neighborhood, yet it would not if it were held in single ownership.

The term "public use" is also an expression of indefinite signification, and its application to the facts of any particular case is also to be determined from evidence. The supplying of water to a tract of agricultural land, though of many thousand acres in extent, if occupied by an individual proprietor, would be for his private benefit, and not a public use, yet the same tract of land might be so subdivided and held in individual proprietorship as to render the supply of water to it a public instead of a private use. The same tract of land may constitute a farming neighborhood, and yet be so limited in the elements which make it a neighborhood,

that the supplying of water to it would not constitute a public use. (*Aliso Water Co.* v. *Baker*, 95 Cal. 270.) It is not necessary that the entire public shall enjoy the use, or even that it be capable thereof, but the use must be capable of enjoyment by all who may be within the neighborhood, and there must be within that neighborhood so great a number of the entire public as to destroy its character as a private use.

Whether the particular region is a farming neighborhood, and whether the supplying of water to that neighborhood constitutes a public use, are questions of fact, which must be determined by the court before whom the proceeding is had, and its decision thereon must be held conclusive upon this court to the same extent as in other cases where it is called upon to determine matters of fact. It is only when it appears that such decision is manifestly erroneous, either by an abuse of its discretion or by making its decision without any evidence to support it, that this court will call it in question. In the present case, the court below has found that the region to which the plaintiff proposes to supply water is a farming neighborhood, and that the supplying of water to that neighborhood is a public use. There is evidence in the record tending to support both of these findings, and we cannot say that the evidence upon which they were made is insufficient to support them.

For the purpose of determining the existence of a farming neighborhood, it is not essential that the proprietor of a tract of land therein should actually reside upon the land, or cultivate it by his own industry. It is the land to which the water is to be supplied, and the subdivision of the region into individual proprietorships is essential only for the purpose of constituting it a neighborhood, and determining whether such supply is a public instead of a private use. The distinctive characteristic of the neighborhood is that it be a "farming" one, and this implies the proximity of the several tracts of land, rather than of their proprietors. The same pub-

lic use would exist, whether the lands were cultivated by individual tenants to whom the proprietors had leased it, or by the employees of the proprietors, who were themselves absent, as if cultivated by the propriotors residing upon the lands.

Nor does the fact that the stockholders of the plaintiff are owners of land within the neighborhood change the supplying of water to that neighborhood from a public to a private use. If the farming neighborhood exists, it is no objection to these proceedings that every member of that neighborhood is a stockholder in the plaintiff. The public use would still remain, and the incidental benefit to the stockholders from supplying the water to the land would be no greater objection than in the case of a corporation formed to supply water to a town, whose stockholders are inhabitants of the town. Whether a majority of the stock of the plaintiff is owned by a few persons, who are also the owners of the greater portion of the land to be supplied with water, is equally immaterial. These are questions worthy of consideration by the court in determining whether the region constitutes a farming neighborhood, and whether the supplying of water is a public use, but they are not of themselves determinative of the question.

The judgment and order are affirmed.

GAROUTTE, J., and PATERSON, J., concurred.

Hearing in Bank denied.