CITY OF HELENA, APPELLANT, *v.* ROGAN ET AL., RESPONDENTS.

(No. 1,684.)

(Submitted January 23, 1902.   Decided April 29, 1902.)

*Eminent Domain—Condemnation of Water—City Water Supply—Power of Municipality — Complaint — Sufficiency— Description of Property—Water Rights.*

1. Political Code, Sec. 4800, as amended by Laws of 1897, p. 203, gives a city the right to acquire by condemnation proceedings water rights for the purpose of establishing a water supply system.
2. The owner of a valid water right owns a certain incorporeal hereditament

incident to his water right, to-wit, an easement in the stream and its tributaries above his point of diversion. He also has the right to require junior appropriators, who take water from the stream or its tributaries below his point of diversion, to forbear using such water when such use will deprive appropriators prior to him, downstream, of the use of water to which they are entitled.

3. In case of injury to a water right resulting from a tortious act in another county, the action may be brought in either county.

4. Under Code of Civil Procedure, Sec. 610, requiring that actions for the recovery of real property or an interest therein, or for injuries thereto, shall be tried in the county in which the subject of the action or part thereof is situated, and Section 2216, providing that condemnation proceedings shall be brought in the district court of the county in which the property is situated, proceedings to condemn water appropriated for irrigation purposes may be brought and tried in the county in which the land is situated, though the water is to be taken in another county.

5. A complaint by the city for the condemnation for a water supply of certain water rights in a stream is not defective for failing to allege that the water supply can be procured without incurring an indebtedness which, with the existing indebtedness, will exceed 3 per cent. of the assessed valuation, or that the limit was extended by having the question submitted to the voters, and that a majority of the votes was in favor of the proposition, notwithstanding Constitution, Art. XIII, Sec. 6, prohibiting a city from incurring an indebtedness, including existing indebtedness, exceeding 3 per cent. of the assessed valuation, unless the limit shall be extended by a vote of the people for the purpose of procuring a water supply.

6. A complaint by a city for the condemnation of water rights in a stream for a water supply is not defective for failing to allege that it has a right of way to the stream, or that it will be able to get one.

7. Condemnation proceedings are statutory, and a strict compliance with the requirements of the statute is necessary.

8. A complaint by a city for the condemnation for a water supply of water rights in a stream, alleging that defendants "claim to be the owners of and entitled to the right" of a designated quantity of water of the stream "for irrigating purposes" in a certain county, is fatally defective for failing to describe the lands, the number and size of the ditches thereon or appurtenant thereto, and the place of diversion, though it would involve great labor and expense to so describe the property.

9. Under Code of Civil Procedure, Sec. 2214, Subd. 3, providing that, before property already appropriated to some public use can be taken under the right of eminent domain, it must appear that the public use to which it is to be applied is the more necessary use, water appropriated for irrigation purposes may be condemned for the purpose of procuring a city water supply, where the use for which it is to be taken is more necessary than the existing use.

10. A complaint in proceedings to condemn for a city water supply water already appropriated to a public use must allege facts which show that the use for which the water is to be taken is more necessary than the existing use, the relative degrees of necessity being a question for judicial determination.

11. *Quaere:* In a proceeding by a city for the condemnation of water rights for a water supply, is a complaint good which does not state facts sufficient to show the court that it is impossible for the city to appropriate an ample supply from the unappropriated waters of the stream?

12. *Quaere:* In a proceeding by a city for condemnation of water rights for a water supply, is a complaint or decree good if it employ only the word "inches" in relation to the measurement of water?

*Appeal from District Court, Lewis and Clarke County;
J. M. Clements, Judge.*

CONDEMNATION proceedings for the purpose of establishing
a water supply system by the city of Helena against Hugh J.
Rogan, the Ames Realty Company, and others. From a judg-
ment for defendant the Ames Realty Company, plaintiff ap-
peals. Affirmed.

## STATEMENT OF THE CASE.

. This cause is before us on appeal from the judgment of the
district court in favor of the defendant Ames Realty Company
and against the plaintiff.

The plaintiff, in 1900, brought proceedings in the district
court of Lewis and Clarke county in eminent domain against
176 defendants, including the Ames Realty Company, to con-
demn certain property. The complaint alleges that on the 3d
day of December, 1900, the city council of the city of Helena
duly passed and adopted an ordinance for the purpose of ac-
quiring by condemnation 350 inches of the water and water
rights of McClellan creek, and those water rights of Prickly
Pear creek comprising the waters of said McClellan creek, for
the purpose of procuring a water supply for said city, which
shall own and control said supply, and devote the revenues
derived therefrom to the payment of the debt incurred there-
for; that the only provision of the ordinance describing what
water and water rights should be condemned is as follows:
"Sec. 3. That of the water and water rights of said McClellan
creek and its tributaries, situated in Jefferson county, state of
Montana, and all those water rights of Prickly Pear creek,
situated in Jefferson and Lewis and Clarke counties, state of
Montana, comprising the waters of said McClellan creek, three
hundred and fifty (350) inches be condemned for the purpose
of procuring a water supply for said city of Helena, which
shall own and control the same, and devote the revenues derived
therefrom to the payment of the debt incurred therefor." A

particular description of McClellan creek, alleging that it is a tributary of Prickly Pear creek, and situated wholly in Jefferson county, is then set forth. Then follows a particular description of Prickly Pear creek from its confluence with Mc-Clellan creek to its mouth at the Missouri river. From the description it is seen that the distance from the confluence of McClellan creek to the boundary line between Lewis and Clarke county and Jefferson county is about one and four-fifths miles; and that the remainder of Prickly Pear creek to its intersection with the Missouri river is wholly in Lewis and Clarke county; further, that all the water rights sought to be condemned by this action are expressly described as being only those taken from that portion of Prickly Pear creek exclusively in Lewis and Clarke county.

It is further averred that "said 350 inches of water and water rights sought to be taken is a part of and does not include all of the waters of McClellan creek and those water rights of Prickly Pear creek comprising the waters of said McClellan creek." It is alleged "that the city of Helena has not now, and never has had, a water supply or water system of its own; that the use to which said water and water rights are to be applied is a public use, duly authorized by law, to-wit, the procuring of a good, pure, wholesome, and abundant supply of water for the said city of Helena and its inhabitants;    *    *    *    and that the taking of 350 inches of water and water rights is necessary to such use."

Paragraph 16 of the complaint is as follows: "On information and belief [it is alleged] that each of the above-named defendants has or claims to have some right or interest in those water rights of Prickly Pear creek in Lewis and Clarke county aforesaid, which comprise the waters of said McClellan creek, each of which said rights or interests are hereinafter more particularly described."

Following paragraph 16, the complaint contains a description of the respective interests of each of the 176 defendants to the right to the use of the waters of said Prickly Pear creek

in Lewis and Clarke county, and, inasmuch as the only description pertinent to this inquiry is that of the Ames Realty Company, there is set forth only that portion of the complaint describing said company's interests, viz., it is alleged "on information and belief that the said defendants Ames Realty Company, Henry Sepple Ames, Bradford Improvement Company, Mary C. Bradford, and Lucy V. S. Ames are or claim to be the owners of and entitled to the right to the use of about two hundred and seventy-five (275) inches of the waters of said Prickly Pear creek in said county of Lewis and Clarke, dating from about the 1st day of April, 1866, for irrigating purposes in said county; and that, by reason thereof, of the said three hundred and fifty inches of water hereby sought to be taken, they are or claim to be the owners of and entitled to the right to the use of about two and one-half inches of the said waters of Prickly Pear creek comprising the waters of said McClellan creek, dating from said date, and for said purpose." It is further alleged "on information and belief that the said defendants Ames Realty Company, Mary C. Bradford, and Lucy V. S. Ames are or claim to be the owners of and entitled to the right to the use of about one hundred and sixty-seven inches of the waters of said Prickly Pear creek in said county of Lewis and Clarke, dating from about the 6th day of April, 1866, for irrigation purposes in said county, and that by reason thereof, of the said 350 inches of water hereby sought to be taken, they are or claim to be the the owners of and entitled to the right to the use of about one and one-half inches of the said waters of Prickly Pear creek comprising the waters of said McClellan creek, dating from said date, and for said purpose." It is further alleged in the complaint "that each and every and all of the said water rights of the above-named defendants hereinbefore set forth are more particularly designated and described by the respective ditches of said defendants carrying and conveying said waters from that portion of said Prickly Pear creek in said Lewis and Clarke county, hereinbefore described, to and upon their said ranches in said county of Lewis and Clarke."

The prayer of the complaint is for the relief usually sought in condemnation proceedings.

*Mr. Edward Horsky, Messrs. Toole & Bach,* and *Mr. R. Lee Word,* for Appellant.

This is a condemnation proceeding, and therefore Section 2216 of the Code of Civil Procedure must necessarily be the basis for determining the venue of such actions. Respondents' lands, its ditches, and the portion of Prickly Pear creek from which its water rights are taken, are all situated in one and the same county, namely, Lewis and Clarke county. In view of these facts we contend that, applying the principles heretofore announced by this court, and by all other authorities, said water rights and the interests therein sought to be condemned, which constitute the property sought to be taken by the city, are situated in the county of Lewis and Clarke. (*Smith* v. *Deniff,* 23 Mont. 65, 60 Pac. 398; *Tucker* v. *Jones,* 8 Mont. 225, 19 Pac. 571; *Sweetland* v. *Olson,* 11 Mont. 27, 27 Pac. 339; Long on Irrigation, Secs. 73, 78, and authorities cited.)

Under Section 4800 (Laws of 1897, pages 210-212), the city clearly has the right to acquire its own water supply, either by purchase or condemnation, or both; it is thereby authorized and empowered. The question of payment does not figure in condemnation proceedings until there is to be an actual taking of the property condemned. Nowhere does the court pass upon the power or ability of the plaintiff to pay the damages, but, on the contrary, the judgment is conditioned upon the payment. In this way defendant obtains all the protection the statute gives him, and the court is not required to pass upon the matter in advance. It therefore has no place in either complaint or summons. In so far as designating the quantity of water the plaintiff desires to take is concerned, it is specific and certain. It is running water, and can only be defined by the number of inches to be condemned. (*Woodward et al.* v. *Superior Court of City and County of San Francisco et al.,* 40 Pac. 538.) For aught that appears from the face of the

complaint, there is sufficient cash money in the treasury over and above current operating expenses, wherewith to purchase outright the water supply. The debt to be incurred is for the water supply and system. As to whether a debt will be incurred, a debt within the three per cent. limit, or a debt beyond the three per cent. limit; and if the latter whether the limit of indebtedness has been extended, that is a matter of defense to be set forth in an answer as a bar and defense to defeat this proceeding, if it does constitute such a bar or defense. "If the objection consists in the denial of some matter alleged in the petition, or in the existence of some extrinsic fact, which constitutes a bar to the proceeding, the better practice is to make such objection in the form of a plea or answer to the petition." (Lewis on Eminent Domain, Sec. 390, and numerous authorities cited.) "Though the statute must be complied with, a substantial compliance is sufficient." (Lewis on Eminent Domain (2d Ed.), 348, at page 824, citing: *Indianapolis, etc. Ry. Co.* v. *Christian,* 93 Ind. 360; *Shields* v. *McMahon,* 101 Ind. 591; *Heick* v. *Voight,* 110 Ind. 279; *McCallister* v. *Shucy,* 24 Iowa, 362; *State* v. *Pitman,* 38 Iowa, 252; *Stevens* v. *Board of Supervisors,* 41 Iowa, 34; *Townsend* v. *Chicago & Alton Ry. Co.,* 91 Ill. 545; *Byron* v. *Blount,* 97 Ill. 62; *City of Deering* v. *County Commissioners,* 87 Me. 151, 32 Atl. R. 797; *Belk* v. *Hamilton,* 130 Mo. 292, 32 S. W. Rep. 458.) "The substance not the form will be looked to." (Lewis, *supra.*)

"A complaint or petition for condemnation need contain only those allegations required by statute." (*Cahill* v. *Village of North Park,* 149 Ill. 156 (1893), 36 N. E. 606; *Id.,* 149 Ill. 162, 36 N. E. 608; *Chicago, etc. Co.* v. *City of Chicago,* 150 Ill. 597, 37 N. E. 1029.) That following the phraseology of the statute is sufficient. (*Flint, etc. Ry. Co.* v. *Detroit Ry. Co.,* 64 Mich. 350; 7 Ency. Pl. & Pr., 531, citing *Rochester R. Co.* v. *Robinson,* 133 N. Y. 242; *Inayle* v. *Missouri R. Co.,* 63 Mo. 465; *Seaman* v. *Washington,* 172 Pa. St. 467; *Byrnes* v. *Douglass* (Nev. 1895), 42 Pac. 798.) "The general rule

is that the mode of procedure pointed out by the statute must be pursued, to the exclusion of all other remedies, both on the part of the condemning party and on that of the land owner." (Ency. of Pl. & Pr., Vol. 7, p. 470, par. 4, and authorities cited in foot notes.) What is required by the statute to be stated on the part of the condemning party in its complaint, and what is the remedy of the land owner by the statute in respect to his defense, *i. e.*, what is required in respect to the matter of pleadings? Section 2217 of the Code of Civil Procedure defines what the complaint must contain. On the trial plaintiff is only required to establish the facts required to be alleged under the statute, all else is defense. (*Monterey County* v. *Cushing*, 83 Cal. 507, 23 Pac. 700; *California S. R. Co.* v. *S. P. R. Co.*, 67 Cal. 63, 64, 7 Pac. 123.)

The contention of defendant "that the fact that the city is authorized to incur such indebtedness must appear in the complaint in the action," as well as all other matters which are not required to be stated under Section 2217, cannot be maintained. Not being required to be stated in the complaint, they are matters of defense, when material at all. All that could be required under any condition is, that before the property is taken just compensation should be made. In so far as any conditions are concerned, it is only when the statute imposes conditions upon the power to condemn that it is necessary to allege compliance with the conditions; and it must be noted that the statute must refer to the question of condemnation and not of taking. (See Vol. 7, Ency. of Pl. & Pr., page 536, e.) Provision is made by law for payment, and that is all that is required. It is a condition precedent to the taking and not to the right to condemn. (Lewis on Em. Dom. (2d Ed.), Sec. 452.) "The condemnation of property for supplying a city or town with water is so manifestly a public use that it has seldom been questioned and never denied." (Lewis on Eminent Domain (2d Ed.), Sec. 173, and long list of authorities there cited.) "The condemnation of a water supply system is within the unquestioned limits of the power of eminent do-

main." (*Long Island Water Co.* v. *City of Brooklyn,* 166 U. S. 685, 41 L. Ed. 1165.)

The next question is: Is the use more public than that to which it is now applied? We submit that this appears from the complaint, in that it is shown that the city of Helena, a municipal corporation, which is a city of the first class, having a population of more than ten thousand people, and of which the courts take judicial notice, is seeking to acquire a good, pure, wholesome and abundant supply of water for municipal and domestic purposes. That this use is superior to the use to which it is now devoted by defendants is self-evident. From the facts alleged in the complaint, or proved to the court or judge under Section 2220, Code of Civil Procedure, the describing the nature of the use, the court or judge must decide whether it is a more necessary public use than that to which it is already devoted. It is a legal question. The facts being alleged, the court must decide therefrom. No allegation of a legal conclusion by the plaintiff would suffice or strengthen the complaint in the least. The complaint amply sets forth these facts. It is therefore sufficient in these respects. It is asserted that by reason of the constitution providing that "water appropriated for sale, rental, distribution, or other beneficial use, shall be held to be a public use," water which is already taken for a beneficial use cannot be taken for any other use. That provision of the constitution is not intended as a limitation upon the right to condemn such classes of property as are therein described, but by way of and for the purpose of defining and making such uses of private property public uses; such uses of private property, in the absence of said constitutional provisions, might or might not be held public, and therefore the constitutional framers, to avoid any doubt about the matter, expressly recognized such uses as public. (10 Ency. L. (2d Ed.), p. 1071.) Moreover, this provision should be construed in connection with Article XIII, Section 6, of the Constitution, authorizing cities to extend their limit of indebtedness to secure a water supply. In the case of *St. Helena Water*

*Company* v. *Forbes,* 62 Cal. 182, construing article 14 of the California constitution, similar to Montana's, it was held that "supplying a town with water is a public use within the exercise of eminent domain, and the waters of a creek may be condemned therefor." (See also *McCrary* v. *Beadry,* 67 Cal. 120; *Cummings* v. *Peters,* 56 Cal. 593.)

The case of *Ellinghouse* v. *Taylor* (Mont.), 48 Pac. 757, construes Section 15 of Article III of our Constitution, and states that the use of water to irrigate a 160-acre field, owned by one person, is on principle a public use just as if there were thousands of acres owned by many different persons, "the difference being only in the extent of the benefit." The court evidently recognized the fact that there is a difference in the extent of the benefits. We submit this same difference would obtain in so far as it relates to which of given public uses is a more necessary one than another. The extent of benefits to be derived by the public would be one of the elements entering into a determination of the question. A case, which, while not deciding the precise points involved herein, but shedding much light upon many features of this appeal, is that of *Oregonian Ry. Co.* v. *Hill,* 9 Ore. 376, and as to the character of a judgment in condemnation, see *Oregon Ry. Co.* v. *Bidwell et al.,* 3 Pac. R. 684.

The amended complaint shows a sufficient description of the property. (Code of Civil Procedure, Sec. 2213, Subd. 4; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; Randolph on Em. Domain, Sec. 313; Lewis on Em. Domain (2d Ed.), Sec. 350; *Corey* v. *Swagger,* 74 Ind. 211; *Wright* v. *Wilson,* 95 Ind. 408; *Ingraham* v. *Camden Water Co.,* 82 Me. 335; *In re Malone Water Works Co.,* 15 N. Y. Supp. 649; 18 Cent. Digest, 1529; *Village of Champlain* v. *McCrea,* 165 N. Y. 268; Randolph on Em. Domain, page 300.)

House Bill No. 203 of the Sixth Session Laws, is complete and perfect upon the subject, and supplants the provisions relied upon by defendants; this is intended to be a law special and applicable to all cities and to embrace the whole subject. (*Gar-*

*rett* v. *Bradley,* 3 App. Cases, 952; *People* v. *Jaehne,* 103 N. Y. 182; *State* v. *Jersey City,* 54 N. J. L. 49; *Husserc* v. *Com.,* 25 Pa. St. 126; 23 Ency. Law, p. 485; *In re Wheelock,* 3 N. Y. Supp. 890-892.)

Mr. *Massena Bullard, Messrs. Clayberg & Gunn,* and *Mr. J. Miller Smith,* for Respondent, Ames Realty Company.

Respondent asserts and claims the right to argue before this court the question as to whether or not the amended complaint states a cause of action. If it does not state a cause of action, then the ruling of the court below on the demurrer is entirely immaterial. This court has decided frequently that this question can be raised in the supreme court for the first time. (Code of Civil Procedure (Mont.), Sec. 685; *Territory* v. *Virginia Road Co.,* 2 Mont. 96; *Gillette* v. *Hibbard,* 3 Mont. 413; *Parker* v. *Bond,* 5 Mont. 1; *Foster* v. *Wilson,* 5 Mont. 53; *Quirk* v. *Clark,* 7 Mont. 231; *Garver* v. *Lynde,* 7 Mont. 108; *Whiteside* v. *Lebcher,* 7 Mont. 473.)

1. The allegations of said amended complaint do not show that the city of Helena has authority to acquire the property sought to be taken. (Subd. 75 of Section 4800 of the Political Code as amended by the Act approved March 8, 1897 (Laws of 1897, pp. 203-212); Constitution, Art. XIII, Sec. 6; *Fletcher* v. *Peck,* 6 Cranch, 87-145; Cooley's Const. Limitations (5th Ed.), pp. 693-694, and notes; Constitution, Art. III. Sec. 14; *Godfrey* v. *District Court,* 46 N. W. 355; *Sage* v. *City of Brooklyn,* 89 N. Y. 189; *Chapman* v. *Gates,* 54 N. Y. 132; *People* v. *Hayden,* 6 Hill, 359; Code of Civil Procedure, Sec. 2217; Subd. 64 of Sec. 4800 of the Political Code; *Matter of City of Buffalo,* 78 N. Y. 362; *In re Montgomery,* 48 Fed. 896; *Heck* v. *School Dist. No. 2,* 14 N. W. 493; *Lane* v. *Saginaw,* 53 Mich. 442; *United States* v. *Oregon Ry Co.,* 16 Fed. 524; *Whitehead* v. *City of Denver,* 56 Pac. 913; Cooley's Const. Limitations (5th Ed.), Secs. 653-654; *Clay* v. *Pennoyer Creek Improvement Co.,* 34 Mich. 204;

*State* v. *Clinton Water & Water supply Co.*, 46 Atl. 650; Cooley's Const. Limitations (5th Ed.), Sec. 528.)

2. Under the constitution and statutes property cannot be acquired, under the power of eminent domain, except for a public use. The use to which the water supply in question is to be devoted, according to the allegations of the amended complaint, is to supply the city and its inhabitants with water. The water cannot be made useful for this purpose without a water plant and system and without the right to conduct said water from its point of diversion to the city. It does not appear that the city has a water plant or system, but on the contrary it is expressly alleged that it has not. It is not authorized to acquire a plant or system except upon compliance with the conditions stated in Subd. 64 of Sec. 4800 of the Political Code, as amended, and with the provisions and conditions of House Bill No. 206. Until it is authorized to acquire a plant and system in connection with which it can use the water supply in question it cannot acquire such supply by the exercise of the right of eminent domain. (*Wisconsin Water Co.* v. *Wians*, 20 L. R. A. 663.)

3. There is no allegation in the amended complaint in any way tending to show either that it now owns and has acquired a right of way for conducting the water sought to be condemned to the city of Helena, or any allegations seeking to condemn such right of way. As above stated, the city is not in any position as shown by its amended complaint to put the waters sought to be condemned to a public use. (*Houghton* v. *Huron Copper Mining Co.*, 57 Mich. 547.)

4. It appears from the amended complaint that the water sought to be taken has already been appropriated and is now being used for the purpose of irrigation and otherwise. Under Section 15, Article III, Constitution of State of Montana, the water desired to be condemned in this suit is now devoted to a public use. Ordinarily, where property has been devoted to a public use it may be taken for a more necessary public use. (Secs. 2212, 2214, of the Code of Civil Procedure.) Where

it is sought to take property already appropriated to a public
use it is necessary, under the provisions of this statute, to al-
lege and prove that the use for which said property is sought
to be taken is a more necessary public use. (*City of Helena
v. Harvey*, 6 Mont. 114.) We submit, however, that by virtue
of the provision of the constitution above quoted water which
is being used for any beneficial use cannot be taken for any
other use, whether the other use is a more necessary public use
or not. The constitution does not give any particular use a
preference over any other use, but says that water appropriated
for sale, rental, distribution, or other beneficial use shall be
held to be a public use. In the case of *Ellinghouse* v. *Taylor*,
48 Pac. 757, there is a clear judicial declaration that the use of
water by one individual is just as much a public use as the use
of water by many. As stated by the court in this case, the only
distinction between the use of water by one and the use by
many is in the extent of the benefits and not in the character
of the use. But, again. It is an established rule of law that
where property has been already appropriated to a public use
it cannot be taken for a more necessary public use wholly in-
consistent with the first use, unless there is a clear and explicit
statutory authorization so to do. (*Matter of City of Buffalo*,
68 N. Y. 167-175; *Sharon Ry. Co.*, 9 Am. St. Rep. 133; *L. &
N. R. Co.*, v. *Whitley Co. Court*, 44 Am. St. Rep. 220;
*Cincinnati, etc. R. Co.* v. *Anderson*, 47 Am. St. Rep. 285;
*Matter of Rochester Water Comm'rs*, 66 N. Y. 413; *Fort
Wayne* v. *Ry. Co.*, 32 Am. St. Rep. 277; *L. M. & C. R. Co.* v.
*Dayton*, 23 Oh. St. 510; *L. E. etc. R. Co.* v. *Comm'rs*, 57 Fed.
945; *B. A. & P. Ry. Co.* v. *M. U. Ry. Co.*, 16 Mont. 543.)
The general grant of power to take property for a public use,
and a provision authorizing the taking of property already
devoted to a public use, for a more necessary public use, are
insufficient to authorize the taking of property appropriated to
a public use for another public use, which is inconsistent with
the first use, and where the two uses stand together. The use
of the water sought to be condemned by the city is utterly in-

consistent with and will absolutely destroy the use of water for irrigation or other purposes.

5.   The amended complaint does not contain sufficient description of the property of these respondents sought to be condemned.   (Code of Civil procedure, Sec. 2217, Subd. 5; Code of Civil Procedure, Secs. 2221, 2228; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; *Tucker* v. *Jones,* 8 Mont. 225; *Sweetland* v. *Olson,* 11 Mont. 27; *Beatty* v. *Murray Placer Mining Co.,* 15 Mont. 314; see also *Wiggins* v. *Muscupiabe L. & W. Co.,* 54 Am. St. Rep. 337; Estee's Pl., Sec. 5452 e; *Aliso Water Co.* v. *Baker,* 95 Cal. 268; *Los Angeles* v. *Pomeroy,* 124 Cal. 597-613; *Matter of R. R. Co.,* 70 N. Y. 191.)

6.   Water cannot be diverted from a private stream under authority granted by the legislature in the exercise of the right of eminent domain for the purpose of supplying a town or village with water, without making compensation to the riparian proprietors whose rights are thereby injuriously affected.   (*Hamor* v. *Bar Harbor Water Co.,* 3 Atl. 40; Gould on Waters, Sec. 245.)   The doctrine of riparian rights as established by the common law prevails in Montana.   (*Cruse* v. *McCauley,* 96 Fed. 369; *Benton* v. *Johncox,* 61 Am. St. Rep. 913.)

7.   The amended complaint is defective for the reason that it is not alleged therein that the use for which the property is sought to be taken is a more necessary public use than that to which it is now applied.   Section 2217 of the Code of Civil Procedure provides: "The complaint must contain  *  *  * a statement of the right of the plaintiff."   Section 2214 provides: "Before property can be taken it must appear:   (1) That the use to which it is to be applied is a use authorized by law.   (2) That the taking is necessary to such use.   (3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."   (*City of Helena* v. *Harvey,* 6 Mont. 116; *M. C. Ry. Co.* v. *H. & R. M. R. Co.,* 6 Mont. 416.)   This court will not take judicial notice of the fact that one use is a more necessary

public use than another.   (See Section 1350 of the Code of
Civil Procedure.)   The question of whether or not a certain
use is a more necessary public use than another, is one depend-
ing upon conditions and circumstances and not alone upon the
nature of the use.   (*B. A. & P. Ry. Co.* v. *M. U. Ry. Co.,* 16
Mont. 504.)   The question of whether or not a particular use
is a public use or a more necessary public use than the use for
some other purpose, is a judicial question and must ultimately
be decided by the court in every case.   (Lewis on Eminent
Domain, 2d Ed., p. 408.)

The subject of this proceeding is alleged to be three hundred
and fifty inches of water and water rights.   If said three hun-
dred and fifty inches of water and water rights are property
situated out of the county of Lewis and Clarke, then the dis-
trict court of Lewis and Clarke county has no jurisdiction
thereof.   (Code of Civil Procedure, Sec. 2216.)

I.   As to said water:   Said three hundred and fifty inches
of water is that much of the water of McClellan creek.   Hence,
we first ask:   Is said water property by the law of this state?
The amended complaint recognizes said water as such property
in seeking to condemn it; for only "property" can be so taken.
(Political Code, Sec. 63; Code of Civil Procedure, Sec. 2210.)
The water is a part of the realty and has an owner or owners.
(*Howell* v. *Johnson,* 89 Pac. 556, 8, 9; 3 Kent's Com., 401;
2 Blackstone's Com., 18; *St. Helena Water Co.* v. *Forbes,* 62
Cal. 182, cited in note to Section 1078, Civil Code; *Parks C.
& M. Co.* v. *Hoyt,* 57 Cal. 44; Political Code, Secs. 60-61;
Civil Code, Secs. 1090-1091, 1880; *Smith* v. *Denniff,* 60 Pac.
398.)   From the description of said McClellan creek in the
amended complaint the court will notice that it is not in Lewis
and Clarke county.   (Jones Law of Ev., Secs 127-128; Code
of Civil Procedure, Sec. 3150, Subd. 8.)   Hence, said prop-
erty being water of said creek, it cannot be in the county of
Lewis and Clarke.   Therefore, as to said three hundred and
fifty inches of water, the district court of Lewis and Clarke
county has no jurisdiction.

II., As to said water rights: The only rights which the respondents can have in this three hundred and fifty inches of water in McClellan creek is a right to have it flow to its mouth, which is about a mile south of Lewis and Clarke county (said mouth being the point of diversion made by nature and adopted by respondents), and thence into Prickly Pear creek as it now does. (*Parks C. & M. Co.* v. *Hoyt,* 57 Cal. 44; Knowles, J., in *Howell* v. *Johnson,* 89 Fed. R. 556, 559.) And to use said water for a beneficial purpose. (Civil Code, Sec. 1881.) The appellant seeks by legal means to invade this right in Jefferson county, and therefore in that county is the place to prosecute this proceeding to condemn said water rights as well as said water. (Code of Civil Procedure, Sec. 2216.) If the appellant should divert said water from McClellan creek without condemning it, the respondents would have to proceed in the county where the creek is, in order to enjoin such diversion, even though in another state. (*Howell* v. *Johnson,* 89 Fed. 556.) To abate or enjoin the pollution in one county of a stream flowing into and affecting a village in another the action must be brought in the county where the nuisance was committed. (*Horne* v. *Buffalo,* 49 Hun. 76.) The case of *Smith* v. *Denniff,* 23 Mont. 65, cited by the counsel for appellant, was reversed upon rehearing in the same case, 60 Pac. Rep. 398, wherein the court decides that the right to take water from or over the land of another is in the nature of an easement in gross, which, according to circumstances, may or may not be an easement annexed or attached to certain land as an appurtenance thereto. (*Smith* v. *Denniff* (Mont.), 60 Pac. 398, 399, right hand column, citing Civil Code, Sec. 1882 and Sec. 1251, Subd. 6.) But even if these water rights whether riparian or appropriated rights be appurtenant to lands in Lewis and Clarke county, if they extend into and attach to water in another county and be sought there by the appellant for a public use, there is the place to condemn them just as there would be the place to condemn so much of an irrigating ditch or canal as was wanted in that

county though it was used to irrigate and was appurtenant to a ranch in Lewis and Clarke county. Land in Jefferson county might be appurtenant to land in Lewis and Clarke county for purposes of pasture, flooding, or a way for teams or water; but if such servient land were desired for a public use it and all such rights of way, flooding, and pasture would be condemned in Jefferson county. The respondents who have made appropriations of the waters of Prickly Pear creek below the mouth of McClellan creek in Lewis and Clarke county are interested as owners or tenants in common in the waters of McClellan creek, and the respondents' rights to the three hundred and fifty inches of water of McClellan creek, sought to be condemned by the appellant, have their locus on McClellan creek. In other words, these rights are property on McClellan creek, and no part of these rights to or property in said three hundred and fifty inches of water while in McClellan creek can be in Lewis and Clarke county. (*Lytle Creek Water Co.* v. *Perdew,* 4 Pac. 426, 429, near end of page; *Santa Paula Water Works* v. *Peralta,* 45 Pac. 168, 169, near top of first column.)

The amended complaint shows clearly that appellant is not seeking to condemn water or water rights of Prickly Pear creek, but simply and exclusively the waters of McClellan creek. If appellant's theory were correct, "once McClellan creek water, always McClellan creek water," it would be necessary for it to bring action in every county along the Missouri river, and Mississippi river to the Gulf of Mexico, against nearly all the inhabitants along those streams, before it could get an unclouded title to McClellan creek water, as each person who uses such waters is entitled to his day in court. This shows the absurdity of appellant's position. Therefore, as to said water rights the district court of Lewis and Clarke county has no jurisdiction.

MR. JUSTICE MILBURN, after stating the case, delivered the opinion of the court.

Numerous points have been argued and submitted, the attack

being on the sufficiency of the complaint. They are as follows:

1. Has the city the right to acquire by condemnation proceedings water rights for the purpose of establishing a water supply system for the purposes set out in the complaint? We think it has. House Bill 203 of 1897, amending Section 4800 of the Political Code of 1895, is entitled "An Act to amend Section 4800 of the Political Code relative to legislative powers of cities and to enable cities and towns to acquire by purchase, construction or condemnation proceedings water plants, water supplies, franchises, public buildings and sewers."

"Section 4800. The city or town council has power: * * * (64) * * * For the purpose of providing the city or town with an adequate water supply for municipal and domestic purposes, the city or town council shall procure and appropriate water rights and title to the same and the necessary real and personal property to make said rights and supply available, by purchase, appropriation, location, condemnation or otherwise." (Laws of 1897, p. 203.)

The above provision, which has been in force since March 8, 1897, plainly gives the city the power sought to be exercised in this suit. The Act referred to is the last utterance of the will of the legislature on the subject, and controls.

2. Has the district court of Lewis and Clarke county jurisdiction to try and determine this suit under the allegations of the complaint? We think it has.

The plaintiff seeks to condemn *pro tanto* the respective water rights of the defendants. Although the language of the complaint is very far from explicit, there seems to be an attempt to allege that each of the defendants owns a water right appurtenant to lands in Lewis and Clarke county,—a right to the use of water running in Prickly Pear creek. It also appears that McClellan creek, which lies entirely in Jefferson county, is a tributary of Prickly Pear creek, and that plaintiff desires to divert from said McClellan creek 350 inches of water.

Each person owning a valid water right in Lewis and Clarke county is the owner of a certain incorporeal hereditament, to-

wit, the right to have the water flow in Prickly Pear creek from the head thereof, and from the head of each tributary thereof above his place of diversion, in sufficient quantity to the head of his ditch or place of diversion, and to have it of such quality as will meet his needs as protected by his water right; that is, he owns an easement in the stream and its tributaries above his point of diversion. He also has the right to require appropriators subordinate to him and his water right, who have appropriated and who take water from the stream or its tributaries below his point of diversion, to forbear using such water when such use will deprive appropriators prior to him, downstream, of the use of water to which they are entitled; otherwise he might be required to forbear the use of water to which he is entitled in order to supply the appropriator first in order of priority. This interest in the stream and its tributaries is an easement, and is part of and incident to the water right, to-wit, the property sought to be condemned. Therefore we see that the property sought to be condemned extends over part of the two counties mentioned.

Section 610 of the Code of Civil Procedure provides: "Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial, as provided in this Code: (1) For the recovery of real property, or of an estate or an interest therein, or for the determination in any form of such right or interest, and for injuries to real property. * * *"

Section 2216 of the same Code, referring to proceedings in eminent domain, is as follows: "Sec. 2216. All proceedings under this Title must be brought in the district court of the county in which the property is situated. They must be commenced by filing a complaint and issuing a summons thereon." This section is identical with Section 1243 of the Code of Civil Procedure of California. It is well to note that Section 2216 provides that all proceedings in eminent domain must be *brought* in the district court, etc., whereas Section 610 re-

quires that actions relating to real estate as aforesaid must be *tried* in the county in which the subject of the action, or some part thereof, is situated, etc.   There has been some controversy as to the effect of the words "be brought,"—as to whether the action, having been *brought* in the county where the property sought to be condemned is situated, may be tried and determined in such county.   We do not think there is any merit in the controversy.

In the case of *California S. R. Co. v. Southern Pac. R. Co.,* 65 Cal. 394, 4 Pac. 344, the court, in a condemnation proceeding, held that a proceeding in eminent domain, according to Section 1243 of the Code of Civil Procedure, *supra,* must be brought in the superior court of the county in which the property is situated, and in the opinion in the case uses this language:   "The conclusion here reached is sustained, in our judgment, by Section 1243 of the Code of Civil Procedure, requiring all proceedings under the title in regard to eminent domain *to be brought* in the superior court of the county in which the property is situated.   This language means something more than that the proceeding must be commenced in such superior court.   There are strong reasons why such proceeding should be had in the county where the land sought to be condemned is situated.   The compensation for the land sought to be taken is to be determined upon testimony, and the witnesses most competent to speak upon this subject will usually be found in the county referred to."

In support of respondent's contention that the action should not be brought in Lewis and Clarke county, but in Jefferson county, counsel argues that an action for nuisance committed by persons polluting the stream in Jefferson county would necessarily have to be brought in Jefferson county.   We do not think that reason or the authorities will bear out this contention.   In case a nuisance be erected in one county to the injury of lands in another, then the action may be brought in either county.   An action for a nuisance created by the erection of a dam in a navigable river is local, and cannot be sustained else-

where than in the county where the dam is erected, unless in the case where the dam erected in one county injures the land of an individual in another, when the action may be maintained in either county. (*Oliphant* v. *Smith,* 3 Pen. & W. 180.) In the case last above referred to, as in the case at bar, a view is necessary, and the court remarks: "And, in general, wherever a view may be necessary, there the action must be brought in the county where the injury arises;" the court adding that the exception to the rule is the erection of a nuisance in one county to the injury of lands in another, in which case the action may be brought in either county.

Besides, each one of the defendants having a water right— that is, the right to the use of water diverted from Prickly Pear creek—has an interest in all the water of Prickly Pear creek and its tributaries above his point of diversion. Hence it follows that the appurtenance to his land in Lewis and Clarke county extends into Jefferson county, and is properly located in both counties; in other words, it may be called a "blanket right" spread over two counties. Following the reasoning of the courts which have declared that in case of injury in one county resulting from a tortious act in another county the action may be brought in either county, and considering Section 2216, *supra,* which, in our opinion, requires the action to be brought *and tried* in the county where the property is situated, subject, perhaps, to removal for sufficient cause, and the *locus* of the property, as we have herein described it, as being in both counties, we must and do conclude that the action was properly brought to be tried in Lewis and Clarke county.

3. Is it necessary to allege in the complaint that the water supply can be obtained without incurring an indebtedness, or that the limit of indebtedness has been extended in the manner prescribed by Section 6 of Article XIII of our Constitution; or is it essential to allege that the question of procuring a water supply has been submitted to, and voted upon by, the taxpayers, and that a majority of votes has been cast in favor of the proposition? We think that each of these questions must be answered in the negative.

If the city has not put itself in a position to take the property sought, it may not take the same; but power to initiate proceedings to condemn and power to take—that is, to pay the, damages which may be assessed, and to possess itself of the necessary property after a decree of condemnation has been entered thereon—are very different matters. It is not to be presumed that a city is without power to do what it undertakes to do in a case of this kind; nor is it to be presumed that it has failed to do what is necessary for it to do in order to succeed in its undertaking. If, because of failure to do any of the things suggested in the questions above stated and now under consideration, it has not the authority to maintain the action, to make this manifest it is only necessary that such failure be shown by answer, if it be material in opposition to the condemnation of the property. The law giving it the power to institute condemnation proceedings does not require it to allege in its complaint that it has the money in hand to pay for the property after it has been condemned, or to aver that the limit of indebtedness has been extended, or to declare that the election aforesaid has been held with the result suggested.

4. Is it fatal to omit from the complaint an allegation that the city has a right of way from the creek to the city, or that it is able to get one? It does not appear to be necessary so to allege. It is not any concern of the owners of the property whether the water comes to Helena or not. It would hardly be necessary to allege and prove that the city has engaged the services of a competent civil engineer, and put him under bonds to lay out a feasible route, and to direct and superintend the laying of the pipes so well and faithfully that the water will actually run to Helena, before the owners of the property sought may be required to part with it for a public use.

What rights and remedies a city taxpayer, as such, may have in case the plan is foolish, or impossible of execution, is another question; but this we do not now consider.

5. Is the description of the several properties to be condemned sufficient? The law requires that "a description" of

the property be set out in the complaint. The city seeks to condemn numerous water rights, each *pro lanto*. What is a water right? In *Smith* v. *Denniff,* 24 Mont. 21, 60 Pac. 398, 81 Am. St. Rep. 408, it is defined as the legal right to use water. This may be modified to mean, in this case, the right to use water appropriated according to law from the streams of the state for any useful or beneficial purpose. From what description there is in the complaint, we learn that all of the water rights referred to are rights to the "use of   *   *   * waters   *   *   * for irrigation purposes." Condemnation proceedings are statutory, and a strict compliance with the requirements of the statute is necessary. It has been held that "extreme accuracy is required in the description of the property sought to be acquired, and there must be no uncertainty in such description or in the degree of the interest sought to be acquired." (*Metropolitan Elevated Railway Co.* v. *Dominick,* 55 Hun. 198, 8 N. Y. Supp. 151; *In re New York Cent. & H. R. R. Co.,* 70 N. Y. 191; *Aliso Water Co.* v. *Baker,* 95 Cal. 268, 30 Pac. 537; 3 Estee, Pl. 5452; Long, Irr., at page 262.) We think that it is not necessary to go to extremes in describing the property, but we agree with the last-named authorities in what is said as to the necessity of so describing the property that there will be no uncertainty in the decree, and that the commissioners may know what damages to appraise.

*The city is asking the court for leave to damage the lands of respondents.* This is apparent from the complaint, for there is no stronger inference to be drawn therefrom than that the water rights are held for the useful and beneficial purpose of irrigation. There cannot be irrigation without lands to irrigate. There is no description whatever of the lands to be damaged, except the reference to "the use of   *   *   * the waters   *   *   * for irrigating purposes in said county," thereby giving the court an idea that at least part of the land to which each water right pertains is somewhere in Lewis and Clarke county. Certainly, the value of the water right to be taken,

in whole or in part, is dependent upon the kind and extent of the lands irrigated, as well as upon such other uses as the owner of such right may hereafter be able to put it to, as he is permitted to do under Section 1882 of the Civil Code.

It may not be successfully argued that, as in the present case,—in which there are so many scores of owners,—it would be a tremendous labor, involving great expense, to describe fully each water right with the facts necessary to let the commissioners know what property they shall consider in assessing damages, and to inform the court what to include in its decree; so that, at least when the decree is recorded in the office of the recorder of deeds, it may give notice to the world what sort of interest and what title the respective owners have in and to their real estate after the condemnation of some part or interest therein has been concluded.    The argument of convenience in drawing complaints cannot appeal to us.    The case is the same as to that as if the desire of the city were to damage a ten-acre farm, easily described, by condemning and taking a water right appurtenant thereto.    How full the description need be is not for us to point out.    It should, however, we may venture to say, include a description of the lands, their location, the point of diversion of the water, and the number and size of the ditches upon the said lands or appurtenant thereto.

6.    Another question presented is this:  Can water already appropriated to a public use be condemned in eminent domain proceedings for any other use, whether the other use is a more necessary public use or not?    Section 2214 of the Code of Civil Procedure provides that:  "Before property can be taken it must appear:  *  *  *  (3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."    It must so appear in the complaint.    The use of water to irrigate a farm under the water-right law is a public use.  (Section 15, Art. III, Constitution; *Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757.)    The law permits the condemnation of a water right by a city, as we have seen.    Therefore the position taken by respondents, to-wit, that

water which is being used for any beneficial use cannot be taken for any other use, whether the other use is a more necessary public use or not, is not tenable. Whether the use of water by the city is necessary—that is, whether the city needs a water supply—is for the city, and for the city alone, through its council, to say. Whether it is necessary to condemn the water right in order to supply the city is to be alleged, and is a judicial question to be determined by the court. That it is a more necessary use than that of the ranchman is to be alleged, and by the court judicially determined. If it were not, then not only could a city condemn and take the water from a ranchman owning and irrigating 160 acres of land, but could, on its own allegation of superior necessity, condemn and take the water from another and a neighboring city, and leave it dry. And here again we may, in passing, say that the necessity for a complete description of the property to be taken is necessary, to the end that the court may see that the proposed use is superior in point of necessity to the present public use.

The right to take depends largely upon the superior necessity. In 1886 this court, in *City of Helena* v. *Harvey*, 6 Mont. 114, 9 Pac. 903, held that the right of the city to have the property condemned must be stated in the complaint. (Revised Statutes of 1879, Code of Civil Procedure, Sec. 586.) The right will depend, among other things, upon the answer to the question: Is the intended use superior in point of necessity to the present use? Enough must be alleged to show to the court that it is. The mere statement that it is a use superior in necessity would not be sufficient without the facts as to the present use coupled with those appertaining to the intended use.

Besides the above matters, which are called to our attention in the briefs, we think it not inappropriate to suggest for the consideration of counsel the following matters, which occur to us:

It seems that the city is attempting to secure a water right by acquiring a small fractional interest in each of a very large

number of water rights belonging to numerous persons, respectively, these water rights being of different dates of appropriation from 1866 up to and including 1890, involving different priorities. If the city prevail, what will it have if it get the decree prayed for? It can only acquire from each owner what he owns. If A. be subordinate to B. in the use of water, and B. be subordinate to C., and so on, how can the city lawfully use any of the water formerly used by A. until B. is through with the use of what is left to him after the condemnation proceedings are concluded? If there be water enough for all, there would be no trouble; but, if the ranking appropriators use each to the full his prior right, the small fractions owned by the city would be of little value. May it not be assumed that water is scarce in the creek, or this proceeding would not be in court? We pass no opinion on this matter, either as affecting the possibility of constructing a complaint which will be good for substance, or as affecting any other phase of this case.

We suggest further, as worthy of consideration, this point: In the absence of any allegation as to the volume of water in McClellan creek from which the city seems to desire to divert water, can a complaint be good which does not state facts sufficient to show the court that it is impossible for the city to appropriate an ample supply, in manner and form as any other person may under the provisions of the Civil Code, Title VIII, Part IV, Div. II, Section 1880, *et seq.,* and amendments? There are no such facts set out in the pleading. If there be water in the stream sufficient for all, and to spare, may the city condemn the rights of others? We pass no opinion as to this question.

We suggest, also, that counsel examine the law upon the question, which is suggested to us by reading Section 97 of Long on Irrigation, and the cases cited, in reference to the measurement of water, and as to whether a complaint or decree in such a case as the one before us would be good if it employ

only the word "inches" in relation to the measurement of water. We do not express any opinion as to this matter.

Judgment affirmed.

*Affirmed.*

Mr. Chief Justice Brantly: I concur.

Mr. Justice Pigott: While I am not satisfied that the description of the property sought to be condemned is fatally defective, I am inclined to think that the better reasons support the conclusion announced in paragraph 5 of the opinion. I concur.

[For opinion on motion for rehearing see 27 Montana Reports, p. —.]

